IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WANDA ROGERS | * | CA. NO. |
| | * | |
| PLAINTIFF | * | SECTION |
| | * | |
| V. | * | MAGISTRATE |
| | * | |
| BROMAC TITLE SERVICES, LLC | * | |
| d/b/a PLATINUM TITLE & | * | |
| SETTLEMENT SERVICES, | * | |
| LLC, and TITLE RESOURCE | * | |
| GROUP, LLC | * | |
| | * | |
| DEFENDANTS | * | |

## PLAINTIFF'S ORIGINAL COMPLAINT

THE ORIGINAL COMPLAINT of WANDA ROGERS, a person of the full age of majority and domiciled in the Parish of St. Tammany, State of Louisiana, respectfully represents that:

I

Made Defendant herein is BROMAC TITLE SERVICES, LLC d/b/a PLATINUM TITLE & SETTLEMENT SERVICES, LLC, (herinafter "Bromac") a Louisiana limited liability company with its principal business office at 3001 Leadenhall, Rd., Mt. Laurel, NJ 08054.

1

II

Made Defendant herein is TITLE RESOURCE GROUP, LLC (herinafter "TRG") a Delaware limited liability company with its principal business office at 3001 Leadenhall, Rd., Mt. Laurel, NJ 08054.

III

Plaintiff, WANDA ROGERS, is domiciled in Slidell, Lousiana.

IV

The Court has jurisdiction over this matter as Plaintiffs' claims arise under Federal laws, the Jury Service Protection Act, 28 USC Section 1875.

V

Venue is proper in the Eastern District of Louisiana because a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

VI

Defendant TRG owns Bromac and controls its operations, including Bromac's human resources functions.

VII

Employees of TRG's human resources department provide human resource support to Bromac employees and management and act as Bromac's human resources department.

VIII

Bromac and TRG were Plaintiff's employers and/or joint employers, within the meaning of that term in the Jury Service Protection Act, 28 U.S.C. Section

2

1875.

IX

Plaintiff worked as a closing officer at the Bromac office in Mandeville, Louisiana from May, 2009 until she was involuntarily terminated on or about April 20, 2012. In the course of her employment, Plaintiff acted as closing officer for real estate transactions handled by Bromac and other TRG owned title companies.

X

In July or August, 2011, Plaintiff received a summons to appear for jury duty on the United States Grand Jury for the Eastern District Court of Louisiana.

XI

Plaintiff submitted the summons to Bromac's Human Resources Manager – Jennifer Gilliam. Ms. Gilliam is an employee of TRG.

XII

Plaintiff later talked with Ms. Gilliam on the phone regarding Bromac's policy on employee jury service. During this conversation, Ms. Gilliam instructed Plaintiff to attempt to avoid selection for service by giving false answers to questions by the judge and lawyers.

XIII

On August 19, 2011, Plaintiff was selected as an alternate Grand Juror. She was instructed that she would receive further notice from the Court if she was needed for actual grand jury service.

XIV

On October 13, 2011, Plaintiff was notified that she was to serve as an

active member of the grand jury beginning on October 21, 2011.

XV

The United States Attorney's office provided Plaintiff with a letter to her employer dated October 17, 2011, which Plaintiff emailed to her Bromac supervisor and the TRG Human Resources Manager. (See Ex. 1, attached.)

XVI

The letter from the United States Attorney's office explained to Bromac and TRG that as an active member of the grand jury, Plaintiff would be required to serve all day on Fridays and on other days when special sessions were called until February 19, 2012.  (See Ex. 1.)

XVII

Plaintiff's grand jury service negatively impacted her job with Defendants because she could not schedule closings on Fridays until, at earliest, on Wednesday two days prior, when she found out whether the grand jury was meeting on Friday.  Friday was the most popular day of the week for buyers, sellers and real estate agents to schedule closings.  Plaintiff's co-worker at the Mandeville Bromac office and escrow officers for other TRG closing companies expressed frustration with Plaintiff because she could not schedule to do their closings on Friday due to grand jury service.

XVIII

On or about December 6, 2011, and for some amount of time prior to then, Bromac sought applicants for Plaintiff's position by listing it on Monster.com.

XIX

4

Defendants indicated to Plaintiff that their policy on pay for jury duty was revised due to Plaintiff's grand jury service.

XX

After a few months of serving on the Grand Jury and missing work on Fridays, Plaintiff's manager began to criticize her for time spent out of the office and low closings volume, and he demanded detailed explanations of her whereabouts during the work day.  This was not done for other employees who had duties outside of the office or missed work for personal reasons other than jury service.

XXI

Plaintiff's coworker at Bromac's Mandeville office and other local TMG closing officers expressed their dissatisfaction with the scheduling difficulties caused by Plaintiff's Grand Jury service.  When Plaintiff explained to them the nature of Grand Jury service compared to regular jury service, and the reason she could not schedule closings on Friday, her co-worker and the TMG closing officers indicated to Plaintiff that she could have and should have "gotten out of" service, or expressed their doubt about the truth of her explanation.

XXII

On or about February 10, 2012, Plaintiff was notified that her Grand Jury service was being extended until August 19, 2012.

XXIII

Plaintiff informed Defendants that her Grand Jury service had been extended in the middle of February, 2012.

XXIV

Plaintiff's supervisor continued to complain to Plaintiff about the volume of closings conducted at her office despite the fact that he knew that the volume numbers were low because she was unable to schedule closings on Fridays.

XXV

On April 18, 2012, Plaintiff spoke at a meeting of Latter & Blum real estate agents. The purpose of Plaintiff's speaking engagement was to market Bromac's services to the Latter & Blum agents.

XXVI

During the meeting, the Latter & Blum agents were discussing a weekend open house event. Plaintiff reminded the agents that they were welcomed to call her on her cell phone on weekends to obtain estimates of closing costs or other information regarding Bromac's services, and joked that she would always answer the phone "unless [she was] drinking."

XXVII

Following the April 18, 2012 meeting, TRG's Human Resources Manager, Jennifer Gilliam, told Plaintiff that she was being fired at the request of Latter & Blum, because its representative had complained about Plaintiff's joke at the meeting.

XXVIII

Following the Latter & Blum meeting Plaintiff communicated with Latter & Blum's office manager, who did not complain about the joke Plaintiff made and later confirmed to Plaintiff that she was not aware of any complaint by Latter &

Blum regarding Plaintiff's conduct.

## XXIX

The Latter & Blum agents and employees, and the employees of Defendants who were present at the meeting have experienced statements during similar business meetings that make Plaintiff's joke seem very tame, yet they have not complained about the statements or fired anyone who made them.

## XXX

Prior to being terminated, Plaintiff had never been disciplined by Defendants regarding any claimed work misconduct.

## XXXI

Defendants terminated Plaintiff by reason of her Grand Jury service, in violation of 28 U.S.C. Section 1875.

## XXXII

As a result of Defendants' illegal conduct, Plaintiff has suffered a loss of wages and employee benefits and continues to suffer from such losses.  In addition, Plaintiff has suffered emotional distress, damage to her reputation and sense of self esteem, and a loss of future earning capacity as a result of Defendants' illegal conduct

### JURY DEMAND

## XXXIII

Plaintiff demands a jury trial on all triable issues of fact.

### PRAYER FOR RELIEF

XXXIV

WHEREFORE, Premises Considered, Plaintiff requests that the Court issue a declaratory judgment that Defendant violated the Jury Service Act, and award Plaintiff unpaid wages and overtime, liquidated damages, costs, attorney's fees, past and future lost wages and benefits, damages for emotional distress, loss of enjoyment of life, reinstatement, attorneys fees, costs, litigation expenses, interest, judicial interest and any other relief to which she is entitled under law or equity.

Respectfully Submitted,
The Law Office of Alan Kansas,
LLC

ALAN F. KANSAS, LA BAR #27725
1801 Carol Sue Ave.
Terrytown, LA 70056
(504) 210-1150
FAX (504) 617-6525

VERIFICATION

I, Wanda Rogers, Plaintiff in the within action, have read the facts contained in the Complaint and affirm, under penalty of perjury, that they are true to the best of my information, knowledge and belief.


Signed this _9th_ day of October, 2012

Wanda Rogers

**U.S. Department of Justice**

United States Attorney
Eastern District of Louisiana

---

*Jim Letten*
*United States Attorney*

*The Poydras Center*
*650 Poydras Street, Suite 1600*
*New Orleans, Louisiana 70130*

*Telephone: (504) 680-3000*
*Fax: (504) 589-4013*

October 17, 2011

Re:  <u>August 2011 Grand Jury</u>

Dear Employer:

We are pleased to advise you that Felissa A. Lowe has been selected by the Court to serve on the United States Grand Jury for the Eastern District of Louisiana; this Grand Jury was empaneled on August 19, 2011.  Ms. Rogers was originally selected as an alternate grand juror but was called to active service on October 13, 2011.

The Grand Jury is responsible for the investigation of activities within our thirteen-parish area that may be in violation of federal criminal laws.  The members of the August 2011 Grand will serve for the next five months; their term will expire on February 19, 2012, unless the Court extends the Grand Jury's service to complete certain investigations.

As we have told the jurors, my staff and I will try to limit the number and length of our Grand Jury meetings.  The jury will usually meet at 9:00 a.m. each Friday morning that it is called in, and leave at about 5:00 p.m.  Sometimes, we may have to call the jury into special session on another day of the week to handle emergency matters.

Every juror must attend each grand jury session unless excused by the Foreperson for good cause.  We will appreciate your cooperation in making it possible for your employee to satisfy this important citizenship obligation without suffering any unnecessary loss or work inconvenience.

If you have any questions about your employee's participation in the Grand Jury process, please do not hesitate to contact this office.

Sincerely,

JIM LETTEN
UNITED STATES ATTORNEY

JL:crr

EXHIBIT 1